The People of the State of New York ex rel. David Sandman, Respondent, *v.* Henry S. Brush, as County Treasurer of Suffolk County, et al., Appellants.

Liquor Tax Law — Right to Certificate Without Consents as to Places in Existence When Statute Was Enacted Is Not Extinguished by Vote of Town Electors Suspending Traffic for Two Years. The right to a liquor tax certificate without consents is a privilege in the nature of a property right that attaches to places where the traffic was carried on at the time the Liquor Tax Law (L. 1896, ch. 112) was enacted, and the privilege cannot be extinguished by the vote of the electors of a town, under the local option provisions of the statute, to the effect that no liquor should be sold therein for a period of two years; the traffic is suspended thereby for such period, but if at the end thereof the electors reverse their determination, the right is revived and the owner's application for a certificate should be considered as if such vote had never been cast.

*People ex rel. Sandman* v. *Brush,* 92 App. Div. 611, affirmed.

(Argued May 31, 1904; decided August 5, 1904.)

Appeal from an order of the Appellate Division of the Supreme Court in the second judicial department, entered March 10, 1904, which affirmed an order of Special Term requiring defendants to issue a liquor tax certificate to the relator.

The facts, so far as material, are stated in the opinion.

*William E. Schenck* for appellants.    The privilege accorded established places of traffic under subdivision 8 of section 17 of the Liquor Tax Law, by reason of the fact that they were occupied for traffic on March 23, 1896, is now subject to the qualification provided in subdivision 5 of said section relative to their continued use since said date. (*People ex rel.* v. *Murray,* 148 N. Y. 171; *People ex rel.* v. *Lammerts,* 18 Misc. Rep. 343; 14 App. Div. 625; *Matter of Zinzow* v. *Schmidt,* 18 Misc. Rep. 653; *People ex rel.* v. *Hamilton,* 25 App. Div. 428; *Matter of Lyman* v. *Korndorfer,* 29 App. Div. 390; *Matter of Bridge* v. *Mohrmann,* 25 Misc. Rep.

213; *Matter of Lyman* v. *Fuhrman*, 34 App. Div. 389; *Matter of Lewis* v. *Pilchen*, 26 Misc. Rep. 532; *Matter of Pierson* v. *Riegel*, 32 Misc. Rep. 293; *Matter of Kessler* v. *Cashin*, 163 N. Y. 205.) The suspension of traffic in liquor at a place originally privileged under subdivision 8 of section 17 of the Liquor Tax Law, occasioned solely by a negative vote upon the local option questions, under section 16 of said act, deprives the place of its privileged character. (*People ex rel. Bagley* v. *Hamilton*, 25 App. Div. 428; Black on Intoxicating Liquors, §§ 82, 127, 128; *Metropolitan Board of Excise* v. *Barrie*, 34 N. Y. 659; *Matter of Hoover*, 30 Fed. Rep. 51; *Bartemeyer* v. *Iowa*, 18 Wall. 129; *Crowley* v. *Christensen*, 137 U. S. 86; *Giozza* v. *Tiernan*, 148 U. S. 662; *Cantini* v. *Tillman*, 54 Fed. Rep. 972; *Decie* v. *Brown*, 157 Mass. 291; *Robertson* v. *State*, 12 Tex. App. 541; *Ex parte Lynn*, 19 Tex. App. 293; *State* v. *Cooke*, 24 Minn. 247; *Pleuler* v. *State*, 11 Neb. 547.)

*Samuel S. Hotchkiss* for respondent. Traffic in liquors having been actually lawfully carried on in said premises on March 23, 1896, consents of the owners of dwellings were not required. (*Matter of Hawkins* v. *Thiele*, 165 N. Y. 188; *Moulton* v. *Acconcia*, 59 App. Div. 25.) The benefit of the exception is not lost by the enforced cessation of traffic in the premises. (*Newell* v. *People*, 7 N. Y. 97; *McCluskey* v. *Cromwell*, 11 N. Y. 601; *People ex rel.* v. *Woodruff*, 32 N. Y. 355; *Schoonmaker* v. *Hoyt*, 148 N. Y. 431.)

O'BRIEN, J. The courts below have decided that the relator was entitled to have a liquor tax certificate issued to him upon his application authorizing him to traffic in liquors at the place described in the application, and have directed the defendant to issue and deliver the same to the relator upon payment of the tax required by law. The question presented by the appeal is whether there is any legal answer or objection to the relator's application that would warrant the defendant in refusing the certificate.

It is contended in support of the appeal that upon the facts disclosed in the relator's application the defendant properly held that he was not entitled to the certificate, and this contention is based upon one ground only, and that is that it appears there were three dwelling houses within two hundred feet of the place described in the application, and no consent of any of the owners or residents of these dwellings was filed or procured by the relator as required by section seventeen of the statute. It does appear, however, that the business of trafficking in liquors was actually carried on at the place described in the application on the 23d of March, 1896, and since that date continuously to April 30th, 1901. At the last-mentioned date under the local option provisions of the statute the electors of the town in which the relator's place is situated determined by a majority vote at a town meeting that no liquors should be sold in the town. This vote operated to suspend all traffic in liquors in the town for two years, and during that time the relator suspended his business of trafficking in liquors. But two years afterwards, that is, in April, 1903, the question was submitted to the electors at a town meeting and by a majority vote the question was decided the other way, and thereupon the business of trafficking in liquors became again lawful. This latter determination operated to reverse the former and to restore all rights and privileges that had been suspended. The legal proposition upon which the argument of the learned counsel for the defendant is based is that the privilege contained in the statute in favor of places such as that of relator, where the traffic was carried on at the time the present statute was enacted, must be continuously exercised, and if not it is lost even though the owner or tenant of the property is compelled to suspend the business against his will and under the force of an adverse vote of the electors of the town.

This proposition on its face would seem to be quite unreasonable and there does not appear to be any basis for it in the statute. It is very plainly stated in subdivision eight of section seventeen that the restrictions as to places within two

96          People ex rel. Sandman *v.* Brush.          [Aug.,

Opinion of the Court, per O'Brien, J.          [Vol. 179.

hundred feet of a dwelling house have no application to places privileged as being used for the business when the law was enacted. This provision of the law was manifestly intended as a concession to rights and interests that in a certain sense were supposed to be vested. It was evidently considered to be unfair to deprive parties that had established business places for traffic in liquor at the date of the enactment of the present law, of the use of their property or their invested capital unless they could succeed in procuring the consent of some dweller within two hundred feet of the place. That it was thought would be going too far in placing property rights and interests that had grown up under prior laws at the mercy of one's neighbor, and hence the exception in favor of places such as that described in the relator's application, and that exception is not made at all dependent upon the continuous exercise of the privilege conferred. A careful reading of the statute will show that the word " continuously " applies only to places where consents are necessary, and does not refer to places where the business was being carried on when the act was passed and so we have held. (*Matter of Hawkins,* 165 N. Y. 188; *Matter of Loper,* 165 N. Y. 618; *Matter of Moulton,* 168 N. Y. 645; *Matter of Kessler,* 163 N. Y. 205.) These cases all hold that the right to a liquor tax certificate without consents is a privilege in the nature of a property right that attaches to places where the traffic was carried on at the time the present law was enacted and that it is not lost or extinguished by a temporary suspension of the business, nor unless by some unequivocal act the owner abandons the right and changes the use of the property. The privilege cannot be extinguished by the vote of the electors of the town under the local option feature of the law. Such a vote has no other effect than to suspend the traffic entirely in the town as to all places during the time specified in the statute, and when the electors reverse their determination at a subsequent town meeting all rights suspended are revived and are in force as completely as if the prior decision had not been made.

The local option feature was intended to confer upon the

people of the town at town meeting the power to decide whether liquor shall or shall not be sold at any place in the town during two years following the vote of the electors. When the electors decide against the traffic that decision has no effect beyond two years and amounts to a refusal to permit the business to be carried on at all, but it cannot affect any other right. The contention that in this case the vote once passed to refuse permission for the traffic abolished the privilege secured by the statute to the places such as that of the relator, ascribes to the local option feature of the law purposes and consequences that were never intended and cannot be imported into the section by any fair construction.

When the relator applied for the certificate there were no restrictions in force in the town in consequence of the vote of two years before under section sixteen of the act, and hence his application should have been considered as if that vote had never been cast. We think, therefore, that the relator was entitled to this certificate on compliance with the other conditions of the statute. We are now concerned only with the facts of this case and will not attempt to anticipate questions that might arise after a long series of years when the traffic has been suspended under repeated adverse votes of the electors and when new conditions have intervened. Cases may be imagined that might present some difficulties, but it is quite sufficient to say that there are no facts in this case that present or suggest any such embarrassment, and if they are likely to arise at all in any case, it will be timely to deal with such questions when actually presented on the particular facts.

The order appealed from should be affirmed, with costs.

BARTLETT, J. (dissenting). The enactment of a Liquor Tax Law is an exercise of the police power.

The law provides, subject to numerous restrictions, that a liquor tax certificate may issue to one making due application for the same. It also enacts that at each biennial town meeting the question may be submitted to the electors under certain conditions to determine whether liquors shall be sold

under the provisions of the act; this is the exercise of "local option."

It would seem to be the reasonable and necessary construction of the act that the liquor tax certificate is issued subject to all its provisions, and that every certificate holder is subjected to the peril of the electors of the town in which he is selling liquors determining at the biennial town meeting that for the next two years such sale in said town is unlawful.

I am of opinion that such adverse vote is a legal cancellation of the liquor tax certificate in the legitimate exercise of the police power.

Whether the people of the state, having issued a certificate for the term of one year, ought to restore to the holder the *pro rata* amount of the license fee paid by him for the certificate, is a consideration to be addressed to the legislature.

The relator as a certificate holder insists that in case of an adverse vote during the life of his certificate, the legal effect is to suspend the same until such time as the sale thereunder becomes legal. In other words, the suspension of the certificate would be for two years at least and might be for four, six or eight or more years, according to the expressed will of the electors at the poll. If this is the correct construction of the statute, it would require persons engaged in the erection of a church, schoolhouse, private dwelling or other structure, coming within the protection of the statute, to inquire at their peril whether there were premises within the statutory limit liable to be used for the sale of liquors, to be drunk upon the premises where sold, by reason of the revival of liquor tax certificates held in suspension for a long term of years.

This is an unreasonable construction of the statute and liable to lead to the erection of churches, schools and dwellings in close proximity to the objectionable places, from the pernicious influences of which the statute was designed to protect them.

The various cases cited in this court are wholly distinguishable in principle from the one at bar.

It is true that the vote of the electors operates to compel an involuntary suspension of the sale of liquors by the holder of the certificate, but it is for reasons not considered or involved in the cases cited.

We have here a clear exercise of the police power, delegated by the legislature to the electors of certain localities in the state, and, as before intimated, the rational construction of the statute leads to the conclusion that every certificate holder receives the same subject to the exercise of that power.

The order appealed from should be reversed, with costs.

PARKER, Ch. J., CULLEN and WERNER, JJ., concur with O'BRIEN, J.; BARTLETT, J., reads dissenting opinion, and MARTIN and VANN, JJ., concur in result.

Order affirmed.